**CHAMPAGNE, a partnership, Plaintiff,**

v.

**Frank DI BLASI, Jodi Giambrone, James Santapolo, Harold Miller and Marvin Welkowitz Defendants.**

**No. CV 99 5786.**

United States District Court, E.D. New York.

March 19, 2001.

Victor M. Serby, New York City, for Plaintiff.

David H. Ledgin, Mineola, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

In this case a group using the name "Champagne" alleges a federal cause of action for unfair competition pursuant to 15 U.S.C. § 1125(a). Damages and injunctive relief are sought pursuant to 15 U.S.C. §§ 1116, 1117 and 1118. Additionally, the Plaintiff partnership seeks recovery pursuant to various provisions of New York state law. Presently before the court are the parties' cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the court denies Plaintiff's motion. The court grants the Defendants' motions to the extent of granting summary judgment on the sole federal cause of action. The court declines to exercise jurisdiction over the remaining state claims and accordingly, dismisses this action in its entirety.

---

1. At times, Plaintiff styles its motion as a "motion to strike." It is clear, however, that

## BACKGROUND

### I. *Factual Background*

The deposition testimony and other uncontroverted documents submitted in support of and opposition to each motion, reveal the following facts.

### A. *History of "Champagne"*

In December of 1995, Charles Arcuri, one of the current partners in the Plaintiff partnership, founded a group and named it "Champagne." Champagne specialized in both band music and acappella singing of cover music (songs that had already been recorded by other musical groups). Champagne never performed any original music. The group, which has been comprised of various different members from time to time, has used the name "Champagne" and that name only, since December of 1995. Over the years, Champagne has performed at various bars, dance clubs and restaurants. With the exception of certain charity events and functions involving radio stations and town concert series, the group has generally received between $600 and $900 per performance. Defendant Frank Di Blasi and Charles Arcuri where responsible for booking performance engagements for Champagne.

While the precise membership has changed, Champagne has, at all relevant times, had a membership of approximately nine members. The members of the group have continuously changed as people have joined and others have left the group on a regular basis. To illustrate, Charles Arcuri founded Champagne in December 1995. Defendant James Santopolo joined Champagne in September of 1996, defendant Frank Di Blasi joined the group in November of 1996. Defendants Harold Miller and Jodi Giambrone joined Champagne in

Plaintiff opposes the defense motion and seeks judgment in its favor.

February and December of 1998, respectively. Mr. Miller and Mr. Santopolo were instrumentalists and Mr. Di Blasi and Ms. Giambrone were, during their tenure with the group, its lead vocals. Di Blasi was also Champagne's business manager.

There were other members of Champagne between the time it was founded and the time Jodi Giambrone became a member and there have been members added since that time. The current members of Champagne, the plaintiff partnership, are: Charles Arcuri, John H. Wagner III, Jack Stein, Vincent J. DeMeille, Edward Lupamello, Ruth Bobbie Levy, and Amy Kesten. This partnership was formed as of November 18, 1999. The parties point to no document indicating that any prior partnership agreement was entered into among the various individuals who earlier than 1999 (including Defendants herein) performed under the name "Champagne."

## B. *The Recording Contract*

In September of 1998 Marvin Welkowitz, a sound engineer and recruiter for KEF Records (and a defendant herein) along with Steve Camhi, President of KEF Records, made a verbal offer of a recording contract to Champagne. Mr. Welkowitz states in his affidavit that the main interest of KEF records was the then lead female vocalist of Champagne, Dorothy Young. When Dorothy Young left the group, KEF records withdrew its offer of contract. Defendant Jodi Giambrone joined Champagne as Dorothy Young's replacement in the role of the group's lead female vocalist. After hearing Giambrone, Welkowitz and Camhi offered Champagne a new recording contract. This recording contract offer was later withdrawn when Di Blasi and Giambrone decided to leave Champagne.

## C. *The Trademark Search*

Prior to withdrawal of the contract offer, KEF communicated to Champagne the necessity of obtaining trademark rights to the name "Champagne." In the event that such a trademark could not be obtained, KEF stated that it would require the group to change its name to one that could be trademarked. Frank DiBlasi, in his capacity as Champagne's business manager, was assigned the job of obtaining the trademark. Mr. DiBlasi caused a trademark search to be commenced at an expense of approximately $500 for which he was reimbursed by Champagne.

The results of Di Blasi's trademark search made it known to the group that the name "Champagne" could not be secured for the group. This is because the name had been previously trademarked by the Lawrence Welk Group, Inc. in the area of music, recordings, and movies. Mr. Welkowitz stated that he contacted the attorneys for the Lawrence Welk Group to follow up on the trademark issue and was advised that the band could not use the name. Neither DiBlasi nor any member of Champagne made any further effort to secure a registered trademark in the name "Champagne."

## D. *The Resignation of the Defendant Members of Champagne*

Disagreements between the members of Champagne led to the resignation of four members and the forming of a new group. Frank DiBlasi left Champagne on May 4, 1999. The next day, Jodi Giambrone left. Mr. DiBlasi and Ms. Giambrone decided to form a new group and solicited Mr. Miller and Mr. Santopolo to leave Champagne and join their new group on June 2 and 5 of 1999 respectively. In order to replace Mr. DiBlasi and Ms. Giambrone, Rocco Gabrelli and Bobbie Ruth Levy (current

members of the Champagne partnership) joined the group on May 7 and 19 of 1999.

### E. *Bookings After the Breakup*

As noted above, DiBlasi was Champagne's business manager. As such, he was responsible, in large part, for bookings, confirming engagements and keeping the group's books. In December of 1998, DiBlasi entered a bid of $1200 per performance with the Nassau County Parks Department Office of Cultural Development for engagements for the year 1999. Due to Nassau County budget cuts, no performances were ever booked. On March 27, 1999, DiBlasi entered into an oral contract with a restaurant known as "Trudy B's" for a performance on August 7, 1999 at the price of $650. In April of 1999, DiBlasi entered into a written contract with the Bay Shore Public Library for a performance to be held on August 5, 1999 at a price of $800. Last, in April of 1999, DiBlasi confirmed a contract for a September 25, 1999 performance with the Story Untold Music Alliance through WPDQ in East Howell, New Jersey.

Although the bookings referred to above were made by DiBlasi when he was a member of Champagne, there is no question that Di Blasi's group, and not the remaining members of Champagne, played at the Bay Shore Public Library and at Trudy B's. A question exists, however, as to whether the library and/or the restaurant cancelled their contracts with Champagne and renegotiated new contracts with Di Blasi's group prior to the performances. It appears that neither Champagne nor Di Blasi's group performed the New Jersey engagement.

### II. *The Complaint*

The current members of Champagne commenced this action seeking injunctive relief along with millions of dollars in damages. The basis for federal jurisdiction lies in the allegation that Defendants' have improperly used the name "Champagne." This alleged misuse is stated to violate the federal law of unfair competition contained in the Lanham Act, 15 U.S.C. § 1125(a). Injunctive and other relief is sought pursuant to the powers set forth in 15 U.S.C. § 1116 (providing for injunctive relief), 15 U.S.C. § 1117 (providing for money damages and attorney fees) and § 15 U.S.C. § 1118 (providing for the destruction of infringing articles). Additional grounds for liability are asserted under state law. Plaintiffs seek to impose liability based upon, *inter alia*, fraud, tortious interference with contract, and breach of the fiduciary duty owed by partners to one another.

### III. *Agreement to Injunctive Relief*

This case was commenced by way of order to show cause seeking preliminary injunctive relief. Limited testimony was taken by the court. Thereafter, Defendants agreed to an injunction prohibiting them from using the name "Champagne" for their group. Defendants admitted no liability in agreeing to the injunction and never agreed to the payment of any damages. Rather, they state, they had no intention of using the name "Champagne" for their newly formed group and therefore readily agreed to the injunction to put the matter behind them.

Despite the entry of the injunctive relief sought, the Plaintiff partnership continued to litigate. Since Defendants have not engaged in any behavior that could arguably violate any right that Plaintiff might have to the name "Champagne" since the entry of the injunction, what remains of this litigation is Plaintiff's entitlement to damages, if any, for acts taken by Defendants after leaving the group in May of 1999 and

prior to the December 1999 entry of the injunction.

### IV. *The Parties' Motions*

As noted above, both parties move for summary judgment. Plaintiff argues that the facts, as set forth above, entitle the partnership to summary judgment on liability. Defendants seek judgment on the federal causes of action on the ground that the Plaintiff knew it never had any valid federal trademark rights in the name "Champagne" and therefore, cannot enforce any alleged right to the mark here.

Dismissal of the state law partnership claims are sought on the ground that the parties were never, in fact, a partnership, but were a group of independent contractors. In the alternative, once the federal claim is thus disposed of, Defendants seek dismissal, as a matter of discretion, of the state law causes of action.

After outlining the applicable legal principles, the court will turn to the merits of the motions.

### DISCUSSION

### I. *Legal Principles*

#### A. *Standard For Motion for Summary Judgment*

When a party is entitled to judgment as a matter of law, and the case presents no material triable issue of fact, the court will grant summary judgment to the moving party. Fed.R.Civ.P. 56(c); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Upon a motion for summary judgment, the court's role is not to determine the validity of the issue before the court, but rather to determine if a genuine issue of fact exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is upon the moving party to demonstrate that no material triable issue of fact exists. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. All inferences and ambiguities must be resolved in favor of the nonmoving party. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998).

#### B. *Elements of a Plaintiff's Federal Claim*

■ To establish a claim for trademark infringement a plaintiff must prove: (1) ownership of a valid mark that is entitled to the protection of the law, and (2) that the use of the protected mark, by the defendant, is likely to cause confusion within the consuming public. *See Estee Lauder, Inc. v. The Gap, Inc.,* 108 F.3d 1503, 1508 (2d Cir.1997); *The Sports Auth. v. Prime Hospitality Corp.,* 89 F.3d 955, 960 (2d Cir.1996).

■ A Lanham Act claim for unfair competition pursuant to 15 U.S.C. § 1125(a), on the other hand, does not require proof of a federally registered trademark. *EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopolos,* 228 F.3d 56, 61 (2d Cir.2000); *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co., Inc.,* 79 F.3d 258, 262 (2d Cir.1996). Instead, such a claim requires a plaintiff requires to show: (1) the false or misleading use of any word, name symbol or device in connection with goods or service; (2) in interstate commerce; (3) in a manner that is likely to cause confusion or deception as to, *inter alia,* affiliation. 15 U.S.C. § 1125(a); *see L. & J.G. Stickley, Inc., 79* F.3d at 262; *High Point Accessories, Inc. v. Sells–Floto, Inc.,* 1998 WL 213189 *4 (S.D.N.Y. April 29, 1998). The purpose of the Lanham Act is, *inter alia,* to "prevent consumer confusion regarding a product's source . . . ." *EMI,* 228 F.3d at 61, quoting, *Centaur Communications, Ltd. v. A/S/M/ Communications, Inc.,* 830 F.2d 1217, 1220 (2d Cir.1987).

## II. *Disposition of the Motions*

The parties' submissions are replete with facts in dispute. One fact, however, is clear. No party here ever owned a federally registered trademark in the name "Champagne." Indeed, the trademark search and subsequent discussion with the holder of the mark made clear that no such registration could have been obtained. Thus, the one thing that is clear is that the Plaintiff partnership has no claim as the registrant of a federally registered trademark. Accordingly, it is clear that there can be no claim under this theory.

Because, as noted above, a Lanham Act claim for unfair competition under 15 U.S.C. § 1125(a), does not require that the mark sought to be protected be a registered trademark, it might be argued that the Plaintiff partnership can pursue this matter as a claim of unfair competition. In view of the facts of this lawsuit, however, the court disagrees.

 When the parties hereto were a group, they endeavored to register the name "Champagne" and thereby obtain the exclusive right to use that name—a right they could have enforced by this court. Having been unable to secure that right (because the trademark was owned by another), Plaintiff here ought not be allowed to pursue what amounts to the same claim, dressed up as a claim for unfair competition. While it is true that the Lanham Act does not require that the mark sought to be protected from confusion be a registered trademark, the court will not allow a party to seek protection for a mark through a claim of unfair competition when that party is fully aware that he has no federally protectible right to the mark as a trademark. Because the Plaintiff partnership's complaint is based wholly on the alleged misuse of the name "Champagne," the court holds that a Lanham Act claim, whatever the theory, may not be pursued.

### CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted. The court declines to exercise its discretion to assert jurisdiction over Plaintiff's state law claims and such claims are accordingly dismissed. The Clerk of the Court is directed to terminate the cross motions for summary judgment and to close the file in this case.

SO ORDERED.