**PGC PROPERTY, LLC and PGC Property II, LLC d/b/a Poxabogue Golf Center, Plaintiffs,**

**v.**

**WAINSCOTT/SAGAPONACK PROPERTY OWNERS, INC. d/b/a East End Property Owners, TWC Group, Inc., Peter A. Wadsworth, Margarita Bailey, Steve Miller, Alexander Johnson, Jean Sinenberg and Gary Waleko, Defendants.**

No. CV 02–2275(ADS)(MLO).

United States District Court, E.D. New York.

March 13, 2003.

Golenbock, Eiseman, Assor, Bell & Peskoe by Elizabeth A. Jaffe, Esq., New York City, Co–Counsel for Plaintiffs.

Pachman & Pachman, P.C. by Matthew E. Pachman, Esq., Commack, NY, Co–Counsel for Plaintiffs on the Counterclaim.

Kaplan Gottbetter & Levenson by Paul R. Levenson, Esq., Scott A. Ziluck, Esq., Michael Garabedian, Esq., New York City, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves claims of unfair competition and cybersquatting by PGC Property, PGC Property II, LLC d/b/a/ Poxabogue Golf Center (collectively, "PGC" or the "plaintiffs") against Wainscott/Sagaponack Property Owners, Inc. d/b/a East End Property Owners ("Civic Association"), TWC Group, Inc. ("TWC"), Peter A. Wadsworth, Margarita Bailey, Steve Miller, Alexander Johnson, Jean Sinenberg and Gary Waleko (collectively, all the defendants are referred as the "defendants" and the individuals named are referred as the "individual defendants").

Presently before the court are the following motions: (1) the defendants' motion for summary judgment (a) dismissing the complaint in its entirety and (b) finding the plaintiffs liable on the defendants' counterclaim; and (2) the plaintiffs' cross-motion for judgment on the pleadings dismissing the defendant's counterclaim.

## I. BACKGROUND

The following facts are taken from the complaint, the defendants' answer, the plaintiffs' counter-statement, and the affi-

davit by Jeffrey E. Shulman, chief executive officer of PGC. According to the plaintiffs, since 1962 the name "POXABOGUE" has been continuously used in connection with its 40 acre golf and recreational facilities and services located in the Poxabogue area of Sagaponack, in the Town of Southhampton, New York. While the name "Poxabogue" is also the name of a pond, a street, and a local preserve, the plaintiffs contend that in the case of PGC golf and recreational facilities, the term operates as a trademark.

The plaintiffs assert that based upon widespread dissemination of the mark in connection with the PGC facility's products and services, the POXABOGUE mark is distinctive and associated with the PGC facility. PGC states that their merchandise, including clothing, golf clubs, golf balls and similar golf-related items, bear the label "Poxabogue". In addition, PGC has advertised on the radio, and in newspapers and magazines. The plaintiffs claim that PGC devotes a substantial portion of its advertising budget to the advertising and promotion of the PGC facility and the POXABOGUE name, and has spent in excess of $250,000 over the last four years in this connection. The plaintiffs also assert that they often receive regular and frequent media attention.

On September 6, 2000, PGC submitted an application to the Southhampton Zoning Board of Appeals ("ZBA") seeking permission for certain limited expansion of the PGC facility. Thereafter, on or about December 15, 2000, PGC registered the domain name "poxabogue.com" with Network Solution, Inc.

On an unspecified date, the Civic Association was established to organize opposition to PGC's efforts to expand its facilities, including opposing PGC's application to the ZBA. The Civic Association is an incorporated New York not-for-profit organization, and the individually named defendants are all members of the Association's board of directors. TWC is a corporation wholly owned by one of the individual defendants, Peter A. Wadworth, who is also the Civic Association's president. The Civic Association's membership consists of homeowners in the vicinity of PGC's facilities.

In or about August 2001, the defendants registered the Internet domain name "www.poxabogue.org". On April 11, 2002, PGC's counsel sent a cease and desist letter to the defendants, asserting that the Association's domain name "www.poxabogue.org" infringed on PGC's POXABOGUE mark. Also, on April 16, 2002, two days before a hearing was to take place before ZBA concerning the plaintiffs' application, PGC commenced this action seeking compensatory and punitive damages, as well as a preliminary and permanent injunction barring the defendants from using the POXABOGUE mark. On April 17, 2002, all the defendants were served with PGC's complaint.

On May 7, 2002, the defendants filed their answer which contained a counterclaim alleging that the plaintiffs commenced this action solely to quell public opposition to PGC's application and to inhibit their free exercise of speech, petition, or association rights. The defendants seek costs and attorneys fees incurred in this action, as well as compensatory and punitive damages pursuant to New York Civil Rights Law § 76–a.

According to the plaintiffs, the defendants have been vociferous opponents of PGC's application for expansion and have voiced their opposition at public hearings, through the media and their Internet web site. PCG claims that before the Civic Association was incorporated, some or all of the individual defendants registered the poxabogue.org domain name and were list-

ed as contact persons on the web site. The plaintiffs contend that they have been unable to obtain information or documentation from the defendants to determine the extent of each of the individual defendant's participation in registering poxabogue.org.

Furthermore, the plaintiffs claim that at the time the poxabogue.org web site began operating, it contained no disclaimer or clarification indicating to Internet viewers that the web site did not belong to or was not affiliated with the PGC's facilities or PGC. The plaintiffs also claim that only after PGC sent the defendants a cease and desist letter on April 11, 2002 did the defendants add a disclaimer in the poxabogue.org web site that it was not affiliated with PGC. Furthermore, the plaintiffs allege that the defendants' web site underwent changes after the cease and desist letter was sent.

According to the plaintiffs, the defendants' web site operates for the purpose of soliciting funds and disseminating information intended to injure PGC's business and property. The plaintiffs asserts that the defendant's web site contains a direct link to the East End Property Owner's web site, which expressly solicits funds The plaintiffs further claim that the defendants have profited from their use of the POXABOGUE trademark by diverting actual and potential customers of the PGC facility to the Civic Association. The plaintiffs contend that the defendants have raised, at a minimum, thousands of dollars from the defendants' appropriation of PGC's trademark.

In contrast, the defendants simply assert that while PGC's web site poxabogue.com relates solely to promoting PGC's golf and recreational facilities, the defendants' web site poxabogue.org contains only information concerning the Civic Association's opposition to the plaintiffs' ZBA application.

## II. DISCUSSION

### A. Standard of Review

A motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotations and citations omitted); *see Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14 (1986); *Vann v. City of New York*, 72 F.3d 1040, 1048–49 (2d Cir. 1995). Disputed facts that are not material to the issue at hand will not defeat summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 176 (2d Cir.1994).

Notably, "the trial court's task at the summary judgment motion state of litigation is carefully limited to discerning whether there is are genuine issues of material fact to be tried, not to decide them. Its duty, in short, is confined at this point to issue-finding, it does not extend to issue resolution." *Gallo v. Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1224 (2d Cir.1994); *see Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

## B. Lanham Act

### 1. Plaintiffs' Unfair Competition Claim

■ The defendants argue that the plaintiffs lack standing to bring a Lanham Act Section 43(a) claim. According to the defendants, because they offer no golf-related services, their alleged use of the term "Poxabogue" does not harm the economic activity in which the plaintiffs engage. The crux of the defendants' argument is that the plaintiffs cannot demonstrate that they are likely to be commercially or competitively injured by any alleged misuse of the plaintiffs' POXA-BOGUE trademark. Thus, the defendants argue that the plaintiffs lack standing to bring a Section 43(a) claim. The defendants' argument is unavailing.

Section 43(a) of the Lanham Act prohibits unfair trade practices involving infringement of trade dress, service marks, or trademarks, even in the absence of federal trademark registration. Because a federal unfair competition claim requires use of a mark "in connection with" goods or services, Section 43(a) is only applicable to commercial uses of another's mark. 15 U.S.C. § 1125(a). It is well-established that the "in connection with" requirement is satisfied not only by use of the mark in connection with goods or services distributed or advertised by the trademark infringer, but by use in connection with the goods or services distributed by the trademark holder. *Planned Parenthood Fed'n of America, Inc. v. Bucci*, No. 97 CV 0629, 1997 WL 133313, at *5 (S.D.N.Y. Mar. 19, 1997); *Jews For Jesus v. Brodsky*, 993 F.Supp. 282, 308–09 (D.N.J.1998).

Here, the plaintiffs correctly assert that the instant case is analogous to *Planned Parenthood*, in which the defendant, who was a non-profit political activist in the antiabortion movement, registered the name "plannedparenthood.com" and set up a web site domain. 1997 WL 133313, at *1. The plaintiff, Planned Parenthood Federation of America, Inc., sought to enjoin the defendant from using the "plannedparenthood.com" domain pursuant to the Lanham Act.1997 U.S. Dist. LEXIS 3338, at *2. In rejecting the defendant's argument that the Lanham Act was not applicable to the plaintiff's claims, the court found that the defendant's use of the plaintiff's mark was found to be "commercial." The court explained:

Defendant has appropriated plaintiff's mark in order to reach an audience of

Internet users who want to reach plaintiff's services and viewpoint, intercepting them and misleading them in an attempt to offer his own political message. Second, defendant's appropriation not only provides Internet users with competing and directly opposing information, but also prevents those users from reaching plaintiff and its services and message. In that way, defendant's use is classically competitive; he has taken plaintiff's mark as his own in order to purvey his Internet services—his web site—to an audience intending to access plaintiff's services.

*Planned Parenthood,* 1997 WL 133313, at *6.

In this case, the plaintiffs claim that the defendants' web site is "in connection with" the services offered by the plaintiffs because it steers Internet users away from the plaintiffs' services. The plaintiffs argue that because the defendants' use of the term "Poxabogue" is used in connection with the plaintiffs' services in that poxabogue.org is directly related to the plaintiffs' golf and recreational facilities, the defendant's use is effectively commercial. Furthermore, the plaintiffs contend that the defendants set up the domain name "poxabogue.org" with the intent of diverting actual and prospective customers of the plaintiffs' services and of harming the plaintiffs commercially. Based on these allegations, the Court finds that the plaintiffs have standing to bring a Section 43(a) claim.

In addition, the defendants argue that, even if PGC has standing to assert a Section 43(a) claim, the plaintiffs could not prevail on the merits of the claim because the plain language of the statute applies only to the commercial use of another's mark. Therefore, assert the defendants, a noncommercial use of a mark is not actionable under the Lanham Act. In addition,

the defendants contend that because their web site is openly critical of the plaintiffs and their activities, no possibility exists that an Internet user would confuse the defendants' web site with the plaintiffs' web site.

The Lanham Act § 43(a) states, in relevant part, that:

(1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, ... which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person,

\* \* \* \* \* \*

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

 As stated above, Section 43(a) applies only to actions taken by a party "in connection with goods and services", *see* 15 U.S.C. § 1125(a)(1), and is limited by 15 U.S.C. § 1125(c)(4)(B), which states that "noncommercial use of a mark" is not actionable under the Lanham Act. The defendants are correct in stating that the mere activation or registration of a domain name does not constitute commercial use *per se. See Bihari v. Gross,* 119 F.Supp.2d 309, 318 (S.D.N.Y.2000). Nevertheless, as the Court has already noted, the "in connection with" requirement may be satisfied by use of the mark in connection with the goods or services distributed by the trademark holder. *Planned Parenthood,* 1997 WL 133313, at *5. Moreover, in *Planned Parenthood,* the court found that the defendant's use of the domain name "plannedparenthood.com" was

also commercial in nature because of his solicitation of funds in relation to his anti-abortion efforts. 1997 WL 133313, at *7. On the other hand, the plaintiffs contend that the defendants are using the web site for fund-raising activities. However, the defendants claim that there is nothing on the site that solicits funds. Given the contradicting statements, at this juncture, and without any discovery, the Court finds that there is a material fact in dispute with respect to whether the defendants are using their web site for fund-raising activities, thereby making the defendants' use of the term "Poxabogue" commercial.

■ To prevail on a Lanham Act infringement claim, a plaintiff must also show that " 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.' " 15 U.S.C. § 1125(a)(1)(A). In deciding whether the plaintiff has established likelihood of confusion, courts must consider the eight factors that were outlined in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961):(1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the buyers.

Under the Polaroid analysis, "summary judgment based on likelihood of confusion is appropriate where 'the undisputed evidence would lead only to one conclusion.' " *The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996) (quoting *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.1996)). However, the Second Circuit has cautioned: " 'If a factual inference must be drawn to arrive at a particular finding on a Polaroid factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment.' " *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 215 (2d Cir.2003) (quoting *Cadbury Beverages, Inc.*, 73 F.3d at 478).

■ Here, with only scant analysis, both the plaintiffs and the defendants claim that the Polaroid factors weigh in favor of their respective positions. The defendants argue that "there is no possibility whatsoever that any reasonable visitor to the Civic Association's web site would be confused into believing that it is the web site of, or is sponsored or endorsed by, PGC or its Poxabogue Golf Center." The defendants further argue that "the only issue of fact relevant to likelihood of confusion identified by plaintiff—whether defendants engage in fund-raising on their web site, whether any actual confusion has occurred, and whether defendants' domain name was adopted in good faith—are wholly immaterial in the absence of a rational, common sense articulation of how confusion might occur." The plaintiffs disagree, asserting that "application of [the Polaroid] factors necessarily requires resolution of myriad issues of fact, and precludes summary judgment at this juncture."

The Court agrees with the plaintiffs that a trial is necessary to assess and weigh each factor and establish, among other things, whether there exists a likelihood of confusion. Several issues of fact are unresolved which preclude summary judgment. In particular, the defendants' good faith in setting up "poxabogue.org", as well as the actual confusion that exists between the mark POXABOGUE and the domain name "poxabogue.org", need to be explored. Furthermore, given that discovery has not yet been conducted in this case, the Court is mindful of the Second Circuit's announcement: " 'Only in the rarest of cases may summary judgment be granted

against a plaintiff who has not been afforded an opportunity to conduct discovery.'" *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 303–04 (2d Cir.2003) (quoting *Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000)). Accordingly, the defendants' motion for summary judgment dismissing the plaintiffs' Section 43(a) claim is denied.

### 2. The Plaintiffs' Cybersquatting Claim

The complaint also contains a cause of action for violations of the Anti–Cybersquatting Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1). The ACPA was passed "to protect consumers and American businesses ... by prohibiting the bad-faith and abusive registration of distinctive marks—as Internet domain names with the intent to profit from the goodwill associated with such marks—a practice commonly referred to as cybersquatting." *Sporty's Farm LLC v. Sportsman Market Inc.,* 202 F.3d 489, 495 (2d Cir.2000); *cert. denied,* 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000).

■ To establish a claim of cybersquatting under the ACPA, a plaintiff must show "(1) that the defendant's domain is either (a) dilutive of a famous mark or (b) identical or confusingly similar to a distinctive trademark; and (2) that the defendant has 'a bad faith intent to profit from that mark.'" *A.B.C. Carpet Co., Inc. v. Naeini,* 2002 WL 100604, *4 (E.D.N.Y. Jan. 22, 2002) (quoting 15 U.S.C. § 1125).

■ The Court finds that an issue of material fact exists with regard to whether the term "Poxabogue" is distinctive. The defendants contend that POXABOGUE is neither a "famous" mark with "household recognition" nor a distinctive mark because the term "Poxabogue" is also the name of the area in which the plaintiffs' facilities are located. While the plaintiffs

concede that POXABOGUE is not "famous," the plaintiffs contend that the term is distinctive insofar as the term is known for being associated with the plaintiffs' golf and recreational facilities and that their merchandise bears the label "Poxabogue". The plaintiffs claim that they have advertised on the radio and the Internet, and in newspapers and magazines under the name "Poxabogue." According to the plaintiffs, based on their widespread dissemination of the mark in connection with their facility's products and services, the POXABOGUE mark is distinctive.

In addition, for the reasons stated above, the Court concludes that an issue of material fact exists as to the issue of whether the defendants acquired poxabogue.org in bad faith with the intent to profit. As the Second Circuit has determined, the issue of a defendant's intent " 'is best left in the hands of the trier of fact.'" *EMI Catalogue P'shp v. Hill, Holliday, Connors, Cosmopulos Inc.,* 228 F.3d 56, 68 (2d Cir.2000) (quoting *Sports Auth.,* 89 F.3d at 964); *see Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 583 (2d Cir.1991) ("issues of good faith are generally ill-suited for disposition on summary judgment"). Accordingly, the defendants' motion for summary judgment dismissing the plaintiffs' cybersquatting claim is denied.

### 3. Individual Defendants

■ The defendants also move to dismiss the complaint against the individual defendants and TWC Group, Inc. ("TWC"). The defendants contend that the complaint does not identify any particular individual defendant as having any right or ability to supervise the allegedly infringing activity or having a direct financial interest in the use of the POXABOGUE mark. In addition, the defendants assert that there are no substantive

allegations against TWC. In response, the plaintiffs claim that, as a host computer for the poxabogue.org site, TWC is liable for the Lanham Act violations under the doctrine of contributory infringement. Furthermore, the plaintiffs contend that the complaint alleges that the individual defendants "expressly and intentionally authorized, directed, and participated in the [illegal] acts" of the Association and TWC. An individual is personally liable for a trademark infringement if he or she is a "moving active conscious force" behind the Association's violation of the Lanham Act. *Proctor & Gamble Co. v. Quality King Distributors*, 123 F.Supp.2d 108, 117 (E.D.N.Y.2000). Because the nature and extent of each of the individual defendants and TWC's participation in the alleged infringement is unclear and there has not yet been discovery, the Court declines to dismiss the action against them at this juncture.

## C. The Defendants' SLAPP Suit Counterclaim

The defendants also move for summary judgment on their counterclaim under the New York State Civil Rights law, which prohibits strategic lawsuits against public participation, *i.e.*, SLAPP suits, alleging that the plaintiffs' action was "commenced without good faith basis in fact or law and was designed to chill the defendants' exercise of their First Amendment rights of free speech and petition." The plaintiffs cross-move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) to dismiss the "SLAPP" suit counterclaim.

To protect the exercise of free speech involving public issues, the New York Legislature recently enacted New York's SLAPP law. N.Y. Civil Rights § 70–2. Under the SLAPP law, when an applicant for a permit or variance brings an action against an opponent of its application, the defendant may seek compensatory damages if the plaintiff's purpose in bringing the suit was to hinder the defendant's exercise of its right to oppose the plaintiffs' application. *Id.* § 70–a(1)(a). If that was the sole purpose of the suit, the defendant may also recover punitive damages. *Id.* § 70–a(1)(C). Furthermore, the SLAPP permits costs and attorney's fees in defending the action. *Id.* § 70–a(1)(a). Under the SLAPP law, an action involving public petition and participation is "an action ... for damages that is brought by a public applicant ... and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission." *Id.* § 76–a(a).

According to the defendants, this action was commenced to inhibit the defendants' exercise of their right to free speech and petition under the First Amendment. The defendants assert that the "plaintiffs attempt to disguise their real motives in bringing this lawsuit—to retaliate against, intimidate and harass defendants because they oppose [the] plaintiff's expansion—as enforcement of their alleged trademark case." The plaintiffs counter by asserting that their claims of unfair competition and cybersquatting are not directed at the defendants' protected speech or ability to petition and participate before the ZBA, but merely to seek redress for the defendants' alleged infringement.

At this juncture, the Court declines to determine the applicability of the SLAPP law. The factual record is limited and no discovery has been conducted. Because there exist issues of material fact with respect to the plaintiffs' claims, the Court finds it premature to determine whether the defendants' web site was developed to exercise their free exercise of speech and petition, implicating the SLAPP law. Accordingly, the defendants' motion for sum-

mary judgment on their counterclaim is denied. Furthermore, the plaintiffs motion for judgment on the pleadings dismissing the counterclaim is also denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendants' motion for summary judgment dismissing the plaintiffs' complaint is **DENIED**; and it is further

**ORDERED**, that the defendants' motion for summary judgment finding the plaintiffs liable under their counterclaim is **DENIED**; and it is further

**ORDERED**, that the plaintiffs' cross-motion for judgment on the pleadings dismissing the defendants' counterclaim is **DENIED**; and it is further

**ORDERED**, that the parties are directed to report forthwith to United States Magistrate Judge Michael L. Orenstein to set a schedule for discovery.

**SO ORDERED**.