**THE SPORTS AUTHORITY, INC.,**
Plaintiff–Appellant,

v.

**PRIME HOSPITALITY CORP.,**
Defendant–Appellee.

No. 145, Docket 95–7161.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1995.

Decided July 23, 1996.

Ralph T. Rader, Bloomfield Hills, MI (Dykema Gossett, PLLC, Bloomfield Hills, MI, Jonathan I. Blackman, Cleary, Gottlieb, Steen & Hamilton, New York City, on the brief), for Plaintiff–Appellant.

Lawrence O. Kamin, New York City (Gregory L. Harris, Esther Berkowitz–Caballero, Wilkie Farr & Gallagher, New York City, on the brief), for Defendant–Appellee.

Before MESKILL, MAHONEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff The Sports Authority, Inc. ("TSA") brought this action for violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and New York's anti-dilution statute, N.Y. Gen. Bus. Law § 368–d, against defendant Prime Hospitality Corp. ("Prime") in the United States District Court for the Southern District of New York. TSA alleged that Prime's use of the words "sports authority" in the name of its sports-oriented restaurants and in its advertising and signs both constituted an infringement of and diluted the value of TSA's registered trademarks. Finding that there were no genuine issues of material fact remaining for a trier of fact to decide, the district court (John S. Martin, Jr., *District Judge*) granted summary judgment to Prime and dismissed the action. *See Sports Auth., Inc. v. Prime Hospitality Corp.*, 877 F.Supp. 124 (S.D.N.Y.1995). Because we believe that genuine issues of material fact exist, we vacate the district court's order and remand for further proceedings.

## BACKGROUND

TSA is a sporting goods and apparel retailer with extensive operations in various parts of the United States, including the greater New York area, and is the owner of three federally registered trademarks: No. 1,527,526, a service mark for the words "The Sports Authority"; No. 1,529,035, a service mark for TSA's logo; and No. 1,821,430, a trademark for the words "The Sports Authority." TSA undertakes substantial advertising to reach potential customers, including television and radio commercials, advertisements in various publications, roadside billboards, and signs in various sports arenas. The result of this advertising, accordingly to TSA, has been considerable exposure throughout the greater New York area.

Prime owns and operates hotels throughout the United States. As part of this business, Prime runs eight sports-related restaurants at its hotels under the name "Sports Authority Food, Spirits & Sports," mainly in the greater New York area. The first of these opened in April 1991 at Prime's Ramada Inn located in Fairfield, New Jersey. Prime advertises these restaurants through a number of mediums, including newspaper, radio, and signs.

In September 1991, TSA informed Prime that TSA recently had become aware of Prime's use of the name "Sports Authority" for Prime's restaurants and TSA asked that Prime cease and desist from using this name. Three days later, Prime responded that, in light of the use of similar marks by other parties, it did not believe that its use infringed on TSA's marks.

Soon thereafter, Prime conducted a trademark search for the mark "Sports Authority" and confirmed that TSA had registered both mark no. 1,527,526 and mark no. 1,529,035. In March 1992, Prime filed an application for a trademark for its logo with the United States Patent and Trademark Office ("PTO"). The PTO initially refused registration, but after Prime clarified that it "uses a design and includes 'Food, Spirits & Sports' in its mark," the PTO published the mark in the Official Gazette of the PTO. Thereafter, TSA filed an opposition to the mark.

In July 1993, TSA filed this action in the district court alleging violations of both the Lanham Act and New York state law. In November 1993, the PTO suspended the opposition proceedings in light of this action. In July and August 1994, following discovery, the parties cross-moved for summary judgment. The district court, applying the bal-

ancing test of *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), concluded that "the balance [of the factors] does not support TSA's claim of trademark infringement" and dismissed the Lanham Act claims. *Sports Auth.*, 877 F.Supp. at 130. The court also dismissed the state law dilution claims because its findings were "inconsistent with such a showing." *Id.* at 131. TSA now appeals.

## DISCUSSION

It is well-settled that in ruling on a motion for summary judgment, a

> judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded [trier of fact] could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir.1996). When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

### I. *Lanham Act Claims.*

To succeed on its Lanham Act claims, TSA must show that it has a valid mark that is entitled to protection under the Lanham Act and that Prime's actions are likely to cause confusion with TSA's mark. *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993); *see* 15 U.S.C. §§ 1114(1) & 1125(a)(1)(A). In order to succeed a plaintiff does not have to show

necessarily that consumers would believe that the defendant's goods or services are from the same source as those of the plaintiff. A defendant may also be liable under the Lanham Act where the defendant's actions are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association" of the defendant's goods or services with those of the plaintiff. 15 U.S.C. § 1125(a)(1)(A).

TSA has valid registrations for all of its marks, so the issue for determination is whether TSA has demonstrated a likelihood of confusion, and we are guided in this inquiry by the *Polaroid* balancing test. There we set forth eight nonexclusive factors to be considered in deciding whether a likelihood of confusion exists: 1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and the defendant's marks, 3) the proximity of the products, 4) the likelihood that the plaintiff will "bridge the gap" between the two products, 5) actual confusion between the two marks, 6) the defendant's good faith in adopting its mark, 7) the quality of the defendant's product(s), and 8) the sophistication of buyers of the plaintiff's and defendant's goods or services. *Polaroid*, 287 F.2d at 495; *see Gruner + Jahr*, 991 F.2d at 1077. Summary judgment is appropriate where "the undisputed evidence would lead only to one conclusion" under the *Polaroid* test. *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.1996). Our task in this appeal from a grant of summary judgment to the defendant "is to determine whether any reasonable trier of fact could conclude that confusion is likely." *Id.* We therefore examine each of the *Polaroid* factors in turn and determine "whether the parties' factual presentations raise a genuine issue of fact." *Id.* at 479.

### 1. *Strength of the Mark.*

Although TSA has alleged in its submissions that it is the owner of three marks, it is the registration of the words "The Sports Authority" (No. 1,527,526) that is most pertinent to this action. In determining the strength of this mark, we look at "its tendency to identify the goods [or services] sold under the mark as emanating

from a particular, although possibly anonymous, source." *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979).[1]

We have set forth four categories to gauge the extent to which a mark indicates a source of goods or services: 1) generic, 2) descriptive, 3) suggestive, and 4) arbitrary or fanciful. *W.W.W. Pharmaceutical Co. v. Gillette Co.*, 984 F.2d 567, 572 (2d Cir.1993). Generic marks are not entitled to protection under the Lanham Act, while arbitrary marks will almost always be seen as strong marks. *Id.; Cadbury Beverages*, 73 F.3d at 479. When determining whether either a suggestive or descriptive mark is a strong one for purposes of the *Polaroid* inquiry, we look to the secondary meaning that the mark has acquired, because the ultimate issue to be decided is the mark's " 'origin-indicating quality,' in the eyes of the purchasing public." *Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 581 (2d Cir. 1991) (quoting *McGregor–Doniger*, 599 F.2d at 1131).

The district court found that TSA's mark was descriptive and therefore required secondary meaning to be protected. *Sports Auth.*, 877 F.Supp. at 128. The district court found that such secondary meaning had been acquired through the mark's uncontested use for five years. *Id.* We agree with the district court that TSA's mark is strong for the purposes of the *Polaroid* inquiry on Prime's summary judgment motion. *Gruner + Jahr*, 991 F.2d at 1078 (stating that "we think it now established that the strength of a descriptive mark made incontestabl[e] ... by registration for more than five years is a matter also properly considered by a trial court on the issue of likelihood of confusion").

Prime argues that we must look beyond the incontestability of the mark to independent indicia of strength. We agree that independent indicia of strength is relevant to deciding whether the strength of the mark weighs in favor or against a finding of likelihood of confusion under *Polaroid*. However, we disagree that our decision in *Gruner + Jahr* compels a finding that TSA's mark is not strong. Not only did *Gruner + Jahr* come to us after a full trial, but there the plaintiff's trademark consisted of a stylized logo of the word "parents" for a magazine on the subject of child-raising. *Id.* at 1078. We acknowledged that the logo was entitled to protection, but we agreed with the district court's finding that the plaintiff's use of the word divorced from that logo was clearly weak. *Id.* at 1077–78. Here, TSA's mark is not limited to the words contained in a logo; instead, registration No. 1,527,526 is for the words "The Sports Authority" without any logo. Thus, in this case, the registration does not just protect the logo but the words as well, and a trier of fact could reasonably conclude that TSA's word mark, having been incontestable for five years, is strong for the purposes of the *Polaroid* test. *Cf. id.* at 1078 ("Any presumption of distinctiveness for likelihood of confusion purposes is lessened by the dissimilarity of the two ... logos before us.").

Prime also directs our attention to what it claims are "dozens of third-party users of marks containing the words 'sports authority.' " Brief for Defendant–Appellee at 21. TSA, however, provided the district court with evidence that Prime's examples were irrelevant because either the use was by an enterprise no longer in existence, or the words were used in conjunction with other words, or were part of an advertising slogan. Although third-party use of the words "sports authority" may be relevant to the strength of TSA's mark, *see Essence Communications, Inc. v. Singh Indus.*, 703 F.Supp. 261, 266 (S.D.N.Y.1988), we are unable to say that the third-party use shown by Prime is sufficient to require that the district court have found that TSA's mark is not strong as a matter of law. Thus, we affirm

---

1. The strength of the TSA's mark is also relevant to the separate inquiry of whether the mark is sufficiently strong to be protected at all under the Lanham Act. *See Gruner + Jahr*, 991 F.2d at 1075–77. Prime here does not dispute that TSA's mark is entitled to protection, nor could

Prime do so because once a mark has become incontestable, the mark is entitled to protection. *Id.* at 1077. In this case, we consider only whether TSA's mark is strong enough to support a finding of likelihood of confusion.

the district court's conclusion that TSA has a strong mark.

### 2. *Similarity.*

 In considering this factor, we look to two key questions: 1) whether the similarity between the two marks is likely to cause confusion and 2) what effect the similarity has upon prospective purchasers. *McGregor–Doniger*, 599 F.2d at 1133. In deciding whether the marks are similar as used, we do not look just at the typewritten and aural similarity of the marks, but how they are presented in the marketplace. *Id.*

 In the district court, Prime submitted evidence to show that it uses the words "Sports Authority" in logo form and only with the trailing words "Food, Spirits & Sports." TSA, however, provided evidence that Prime has advertised its restaurants on billboards, signs, and in radio advertisements without the logo or the trailing words. Prime seeks to discredit this evidence on the ground that these uses were all made in connection with the name of the hotels at which the restaurants are located.

We believe that a reasonable trier of fact, looking at all the evidence submitted here, could conclude that Prime's use of the words "sports authority" and "the sports authority" is similar to that of TSA's mark No. 1,527,-526. The district court, in evaluating TSA's mark, focused simply on TSA's logo, but, as we have already noted, TSA's mark stretches beyond the logo to the words "the sports authority." Here, TSA's evidence in particular showed that Prime had advertised its restaurants on WFAN, a sports radio station that reaches throughout the greater New York City area, in the following way:

> If you're into sports, then the sports authority is the place to be. The sports authority is fantastic! There's non-stop action and the excitement continues with the 1993 football season. Kick off your weekends with the best in college football, or huddle up with the complete satellite coverage of the NFL. At the sports authority, enjoy the great stadium menu or

their famous food and beverage specials throughout the games—all weekend long at the sports authority. And don't forget—every sports authority is giving away a trip to Super Bowl XXVIII. Come on down and enter during the Monday night football game for your chance to win the trip of the year—to the game of the year—Super Bowl XXVIII.[2] Only at the sports authority. It's fantastic! So, for a super good time, get your party team together and be a winner at your party authority—the sports authority. For the best in food, spirits, and sports—the sports authority restaurants and sports bars are conveniently located at Ramada Hotels in East Hanover, Fairfield and Rochelle Park, New Jersey and Armonk, New York. So, catch all the action at the sports authority. It's fantastic!

TSA also advertised during the same period on WFAN, demonstrating its sponsorship of coverage of various sporting events:

> This game is brought to you by The Sports Authority—the sporting goods megastore with everyday low prices so you'll never have to wait for a sale. The Sports Authority—you've never seen anything quite like it, with six locations near you.

As used in these radio advertisements, the parties' marks are identical. Both Prime and TSA use the same three words to describe themselves—"the sports authority"—and Prime's advertisement never adds the words "food, spirits and sports" after "the sports authority," but instead employs them only to describe what a consumer can expect to obtain at Prime's restaurants. Although Prime states in the advertisement that the restaurants are located at Ramada Hotels in New Jersey and New York, this single reference comes at the end of the sixty-second commercial and does nothing to suggest that the restaurants are not owned by TSA and simply located at the hotels.

In addition, TSA presented evidence that when employees at Prime's restaurants answered the telephone at four locations in the New York/New Jersey area, they identified the restaurants as "sports authority" or "the

---

**2.** This contest, a 30–13 rout of the Buffalo Bills by the Dallas Cowboys, turned out to be some-thing less than "the game of the year," particularly for the Bills.

sports authority." There was also evidence that Prime's restaurants were identified in a local phone book simply as "Sports Authority."

Prime seeks to minimize the importance of TSA's evidence by pointing to its own use of the full name of its restaurants in "menus, napkins, signage, advertisements, hotel brochures, matchbooks, and billboards." Brief for Defendant–Appellee at 25. However, most of these uses are located either within Prime's restaurants or in their vicinity, and Prime has failed to cite any evidence of widespread advertising of its full logo even in advertisements and billboards. TSA's evidence, on the other hand, demonstrates advertisements by Prime confined to the words "sports authority" or "the sports authority," of which a large number of persons would be aware. We believe that a trier of fact could determine that TSA's evidence on this score outweighs Prime's evidence of its use of the full logo and conclude that the marks are similar in "the context in which the respective marks are generally presented." *McGregor–Doniger,* 599 F.2d at 1133. Accordingly, we find that this factor, for the purposes of Prime's summary judgment motion, favors TSA.

### 3. *Proximity of the Products.*

"Under this *Polaroid* factor, we consider whether the two products compete with each other." *W.W.W. Pharmaceutical,* 984 F.2d at 573. In this regard, " 'direct competition between the products is not a prerequisite to relief.' " *Arrow Fastener Co. v. Stanley Works,* 59 F.3d 384, 396 (2d Cir. 1995) (quoting *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 257 (2d Cir. 1987)). On the other hand, products that share the same channel of trade are not necessarily proximate. *W.W.W. Pharmaceutical,* 984 F.2d at 573. Here, TSA and Prime are attempting to reach the same market of sports aficionados and are using at least one advertising medium simultaneously. Nonetheless, the parties' services—restaurants and sporting goods stores—are sufficiently different that we agree with the district court that a trier of fact would have to find that

this factor weighs against TSA. *See Cadbury Beverages,* 73 F.3d at 480.

### 4. *Bridging the Gap.*

This factor looks to either the likelihood that TSA will enter Prime's business or the average customer's perception of the likelihood that the plaintiff would enter the defendant's market. *Compare Cadbury Beverages,* 73 F.3d at 482, *with Scarves by Vera, Inc. v. Todo Imports,* 544 F.2d 1167, 1174 (2d Cir.1976); *see also Sports Auth.,* 877 F.Supp. at 129. Under either formulation of the test, we agree with the district court that this factor weighs against TSA. TSA admits that it presently has no plans to enter the restaurant business, nor has it provided any evidence that the public believes that it will do so.

TSA argues that it still may prevail on this factor because the public is aware of a number of restaurants that have bridged the gap into clothing, such as the Hard Rock Cafe and Planet Hollywood. But, if anything, this evidence is relevant to show that Prime might move into the clothing business, not that TSA might move into the restaurant business. TSA has failed to provide any relevant evidence that the public believes that it has or will enter Prime's market. Accordingly, we agree with the district court that this factor does not favor TSA.

### 5. *Actual Confusion.*

For purposes of the Lanham Act, actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another." *W.W.W. Pharmaceutical,* 984 F.2d at 574 (quotation omitted). To show actual confusion, TSA must demonstrate that Prime's use "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Lang,* 949 F.2d at 583.

In the district court, TSA submitted evidence that there have been extensive phone calls made to Prime's restaurants seeking to contact TSA's stores, and also many phone calls to TSA's stores seeking to contact Prime's restaurants. The district court rejected this evidence, however, on the

ground that "it is extremely unlikely that the confusion shown would affect consumers' decisions regarding the purchase of either sports equipment or food and drinks." *Sports Auth.*, 877 F.Supp. at 129. We disagree.

TSA's claim in this action is not that Prime's use of the words "the sports authority" will drive down its clothing sales in a direct manner; instead, TSA is contending that Prime's use will lead consumers to be confused as to whether TSA sponsors Prime's activities, with a resulting loss of control by TSA over how the public perceives TSA's stores and the services that they provide. Such a claim is cognizable under the Lanham Act. *See* 15 U.S.C. § 1125(a)(1)(A); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir.1996); *Dallas Cowboys Cheerleaders v. Pussycat Cinema*, 604 F.2d 200, 205 (2d Cir.1979) ("The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement."); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24.03[3] (3d ed.1996). TSA's evidence of misdirected phone calls between TSA's stores and Prime's restaurants, and especially the evidence that customers have believed there to be a connection between the restaurants and the stores, is sufficient to create a genuine issue of fact on this factor.

■ Prime argues that TSA was required to submit survey evidence to demonstrate actual confusion. Again, we disagree. Although the absence of surveys is evidence that actual confusion cannot be shown, *see Essence Communications*, 703 F.Supp. at 269; *Universal City Studios v. T–Shirt Gallery*, 634 F.Supp. 1468, 1478 (S.D.N.Y.1986), a trier of fact may still conclude that actual confusion exists in the absence of such evidence, so long as there is other evidence of actual confusion, *First Fed. Sav. & Loan Ass'n v. First Fed. Sav. & Loan Ass'n*, 929 F.2d 382, 384–85 (8th Cir.1991). Construing the record in the light most favorable to TSA, as we must, we conclude that a reasonable trier of fact could find actual confusion based on TSA's evidence and that this factor should have been viewed for the purposes of

Prime's motion for summary judgment as favoring TSA.

### 6. *Good Faith.*

■ Under this factor, we look to "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583 (quoting *Edison Bros. Stores v. Cosmair, Inc.*, 651 F.Supp. 1547, 1560 (S.D.N.Y.1987)). "Prior knowledge of a senior user's trade mark does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener*, 59 F.3d at 397.

■ As the district court noted, "Prime began the use of marks very similar to the one at issue here ... in 1989, with no knowledge of TSA's mark." *Sports Auth.*, 877 F.Supp. at 130. In fact, there is no evidence in the record that Prime had any knowledge of TSA's mark until it received TSA's cease and desist letter in September 1991, five months after Prime had opened its first "Sports Authority" restaurant.

■ On the other hand, there is little evidence of good faith on the part of Prime. "Good faith can be found if a defendant has selected a mark which reflects the product's characteristics, has requested a trademark search or has relied on the advice of counsel." *W.W.W. Pharmaceutical Co.*, 984 F.2d at 575. Here there is no dispute that in adopting the name "Sports Authority Food, Spirits & Sports," Prime neither consulted with an attorney nor conducted a trademark search, and the use of the words "sports authority," while they reflect the sports-oriented theme of Prime's restaurants, does not compel a finding of good faith. The evidence also shows that Prime continued to expand its restaurants and, in particular, advertised on radio under the name "sports authority" after receiving notice of TSA's use of the mark "The Sports Authority." Taken as a whole, the evidence does not conclusively point to a finding of either good or bad faith, and this issue, like many intent issues, is best left in the hands of the trier of fact. *See McGregor–Doniger*, 599 F.2d at 1137.

Therefore, we conclude that the district court, for purposes of Prime's motion for summary judgment, should have drawn the inference in favor of non-movant TSA.

### 7. *Quality of Prime's Services.*

 "This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener,* 59 F.3d at 398. TSA has submitted no evidence suggesting that the quality of Prime's services to its customers is inferior to that of TSA, but instead contends that it "is injured by being denied its right to control its reputation and enforce its affirmative decision to disassociate itself from bar establishments." Brief of Plaintiff–Appellant at 40. TSA has set forth no evidence that it would be injured by being associated with a bar and, accordingly, we agree with the district court that this factor favors Prime.

### 8. *Sophistication of Consumers.*

 Because likelihood of confusion "must be assessed by examining the level of sophistication of the relevant purchasers" of the plaintiff's and defendant's services, "we must consider [t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharmaceutical,* 984 F.2d at 575 (quotation omitted). In this case, the goods and services sold by Prime and TSA are food and sporting goods, respectively. These are relatively inexpensive items, and a trier of fact would be justified in concluding that the parties' customers are not likely to be sophisticated purchasers as to the goods in question. *See Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.,* 973 F.2d 1033, 1046–47 (2d Cir. 1992).

Of course, price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer. *Arrow Fastener,* 59 F.3d at 399. We believe that TSA's evidence as to Prime's radio advertisements, the misplaced phone calls, and the customers who believed that TSA's stores and Prime's restaurants were connected is sufficient to make it reasonable for a trier of fact to conclude that the general consumer would not be sophisticated as to the products sold therein. Therefore, the district court should have weighed this factor in favor of TSA.

### 9. *Combining the Factors.*

 Had the district court properly drawn all inferences based on the evidence in favor of TSA on Prime's motion for summary judgment, five factors would have weighed in favor of TSA and three in favor of Prime. We believe that under these circumstances it was error for the district court to enter judgment in favor of Prime. The analysis of the *Polaroid* list of factors "is not a mechanical process" and other factors may be taken into consideration. *Arrow Fastener,* 59 F.3d at 391. Here the trier of fact could reasonably conclude that 1) TSA has a strong mark, 2) Prime's use of the words "sports authority" is similar to TSA's registered mark, 3) actual confusion exists, 4) Prime has acted in bad faith, and 5) the actual consumers are unsophisticated. In addition, we think it significant that although Prime's and TSA's services are not proximate, they do use the same medium—in fact, the same sports radio station—to advertise their restaurants and stores, respectively. If the trier of fact was to find all of these facts in favor of TSA, we believe that TSA would have demonstrated that Prime's use of the words "sports authority" is "likely to cause confusion ... as to [its] affiliation, connection, or association" with TSA's stores and that judgment in favor of TSA would be appropriate. 15 U.S.C. § 1125(a)(1)(A). Accordingly, we vacate the district court's grant of judgment on the Lanham Act claim and remand it to the district court.

## II. *New York Anti–Dilution Law.*

A cause of action for trademark dilution is meant to cover those situations where the public knows that the defendant is not connected to or sponsored by the plaintiff, but "the ability of [the plaintiff's] mark to serve as a unique identifier of the plaintiff's goods

or services is weakened because the relevant public now also associates that designation with a new and different source." 3 McCarthy, *supra*, § 24.13[1][b], at 24–108. Thus, "where the classic likelihood of confusion test leaves off, the dilution theory begins." *Id.*

 To establish a trademark dilution claim under New York law, TSA must show ownership of a distinctive mark and a likelihood of dilution. *Hormel Foods*, 73 F.3d at 506. Dilution can consist of either blurring or tarnishment of TSA's mark. *Id.* TSA does not claim that its mark has been tarnished by Prime's actions and, for purposes of this appeal, we assume that TSA has a distinctive mark, *see supra*, so the only issue for us to resolve is whether TSA has shown that a reasonable trier of fact could conclude that there is likelihood of blurring.

Blurring occurs "where the defendant uses . . . the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's [services]." *Deere & Co. v. MTD Prods.*, 41 F.3d 39, 43 (2d Cir.1994) (emphasis omitted). Traditionally, the likelihood of blurring has been governed by a six-factor test: 1) similarity of the marks, 2) similarity of the products covered, 3) sophistication of the consumers, 4) predatory intent, 5) renown of the senior mark, 6) renown of the junior mark. *Id.* at 43 n. 8.

We have already found that TSA has demonstrated a genuine issue of fact as to the first and third factors: similarity of the marks and sophistication of the consumers. *See supra.* We also have no doubt that TSA has demonstrated, through its evidence of substantial advertising in both the greater New York area and in other areas, that it can prevail on the fifth and sixth factors. TSA has failed to show that there is either direct competition between itself and Prime or that TSA is likely to expand into the area of Prime's services, so the similarity of products—the second factor—weighs against TSA. *See Mead Data Cent. v. Toyota Motor Sales, U.S.A.*, 875 F.2d 1026, 1036 (2d Cir. 1989) (Sweet, J., concurring). Finally, TSA has submitted no evidence of predatory in-

tent. Taking the evidence on these factors in the light most favorable to TSA, we also believe that summary judgment for Prime on the anti-dilution claim was improper and must be vacated.

## CONCLUSION

The order of the district court granting summary judgment to Prime is vacated and the case is remanded for proceedings not inconsistent with this opinion.