**NEW SENSOR CORPORATION,**
Plaintiff

v.

**CE DISTRIBUTION LLC, Defendant.**

No. 03–CV–4257 ILG.

United States District Court,
E.D. New York.

Feb. 3, 2004.

Martin Pavane, Cohen, Pontani, Lieberman & Pavane, New York.

Jonathan Wagner, Kramer Levin Naftalis & Frankel LLP, New York.

David Bodney, Peter S. Kozinets, Steptoe & Johnson LLP, Phoenix, AZ.

## MEMORANDUM & ORDER

GLASSER, District Judge.

This motion arises out of an action for trademark infringement and unfair competition brought by Plaintiff New Sensor Corporation ("New Sensor" or "Plaintiff") against Defendant CE Distribution LLC ("CE" or "Defendant") regarding CE's use of the word SVETLANA on its website, http://www.cedist.com. Before the Court is the motion of CE to dismiss with prejudice or, in the alternative, for summary judgment. For the reasons that follow, CE's motion for summary judgment is granted.

### FACTUAL BACKGROUND

Plaintiff and Defendant are competing U.S. distributors of electron or vacuum tubes ("tubes" or "vacuum tubes") used in electronic equipment such as guitar amplifiers. (Def. Mem. at 5; Matthew Decl. ¶ 12.) J.S.C. Svetlana ("JSC") is a Russian corporation located in St. Petersburg that manufactures electron devices, including vacuum tubes. (Compl. at 6; Ferrari

Decl. Ex. G–A ¶ 7; hereinafter "Rafiee and Gray Decl.") [1]

In 1992, JSC entered into a joint venture agreement with Svetlana Electron Distributors ("SED"), an Alabama corporation "formed to bring Russian power grid tube technology to the West." (Rafiee and Gray Decl. ¶ 9, Exs. A, B; Kozinets Decl. Ex. F.) Pursuant to this joint venture agreement, JSC manufactured vacuum tubes while SED had the exclusive right to distribute them in every country but those of the former Soviet Union. (Rafiee and Gray Decl. ¶ 10.) In order to develop a market for these tubes in the U.S., SED invested significant sums in research, development, and marketing. (Rafiee and Gray Decl. ¶ 13.) The joint venture adopted the name "SED–SPb" (Rafiee and Gray Decl. ¶ 9), which, according to Defendant, stands for "Svetlana Electron Devices—St. Petersburg" (Def. Supp. Rule 56.1 Statement).

The tubes manufactured by the joint venture were marked with a stylized "S" and the words SVETLANA ELECTRON DEVICES. (Compl. ¶ 7; Rafiee and Gray Decl. Ex. F.) In 1997, SED registered these marks with the United States Patent and Trademark Office. (Compl. ¶ 7; Rafiee and Gray Decl. Ex. F.)

According to promotional materials distributed by SED, JSC was founded in 1889 and became the largest power tube manufacturer in Russia. (Kozinets Decl. Ex. F.) In 1913, when it began manufacturing light bulbs, the factory adopted the name SVETLANA from the Russian word "Svet," meaning "light." (Kozinets Decl. Exs. D, F.) As SED's website explained, "light bulb manufacturing naturally

---

**1.** Mr. Raffie and Mr. Gray, former principals of Svetlana Electron Devices, submitted this declaration on behalf of New Sensor in a prior lawsuit that later settled, *J.S.C. Svetlana v. New Sensor Corp.,* CV 01–J–2023–NE (N.D.Ala.). (Ferrari Decl. ¶ 3.) The resulting settlement agreement is discussed *infra.*

evolved into vacuum tube manufacturing in 1929." (Kozinets Decl. Ex. D.)

In 2000, when the joint venture between JSC and SED dissolved, JSC entered into a agreement with PM of America, Inc. ("PMA") to distribute its tubes in the United States. (Compl. ¶ 9; Def. Mem. at 6.) In July 2001, SED sold certain assets to New Sensor, including its trademark rights and goodwill in the SVETLANA mark and the stylized "S." (Compl. ¶ 8; Matthews Decl. ¶ 3.) The tubes that New Sensor currently distributes under the SVETLANA mark are manufactured at Xpo-pul, a factory in Saratov, Russia. (Matthew Decl. ¶ 5.) New Sensor does not sell tubes manufactured by JSC. (Matthews Decl. ¶ 5.) The tubes sold by New Sensor and those manufactured by JSC have equivalent technical specifications. (Ferrari Decl. Ex. I, Letter from Pavane to Cravener, August 13, 2003 at 2.)

In 2001, JSC and PMA filed an infringement action against SED and New Sensor in the United States District Court of Alabama claiming that New Sensor did not have rights in the SVETLANA mark. In 2003, the parties signed a settlement agreement ("Settlement Agreement") with the following terms *inter alia:* (1) New Sensor has the exclusive right to use the SVETLANA mark in the United States and Canada; (2) JSC has the exclusive right to use the Winged–C logo; (3) New Sensor releases CE and other customers of JSC and PMA from any claims arising out of the use of the SVETLANA mark in connection with the sale of inventory manufactured by JSC and purchased by CE and other customers before March 4, 2003. (Matthews Decl. Ex. B.) Following this Settlement Agreement, PMA sent a letter to its customers, approved by New Sensor, which informed them that tubes formerly branded SVETLANA would now be sold under the Winged–C logo:

PM of America, Inc. is announcing that the tubes it has been supplying in the United States and Canada under the name "Svetlana" will now be marketed under a new brand name, "SED St. Petersburg, Russia" and will display the following logo: [Winged–C].

In the early 1990s, J.S.C. Svetlana of St. Petersburg, Russia, and R & G, Inc. of Huntsville, Alabama, formed a joint venture for the purpose of manufacturing and distributing vacuum tubes, resulting in the formation of two new companies. SED/SPb of St. Petersburg, Russia, was formed to manufacture the tubes, and it took over the factory and certain other assets of J.S.C. Svetlana related to vacuum tube production. SED International, Inc., later renamed Svetlana Electron Devices, Inc., of Hunstville, Alabama, was formed to handle worldwide marketing, sales, engineering support, and customer support for Svetlana-branded tubes.

In the year 2001, Svetlana Electron Devices, Inc. transferred its assets, including the name and trademark rights to the Svetlana name, to New Sensor Corporation. J.S.C. Svetlana maintained control of SED/SPb. Also that year, J.S.C. Svetlana appointed a new exclusive worldwide distributor, PM Components, Ltd., of the United Kingdom, which in turn appointed PM of America, Inc. as its exclusive distributor in the United States and Canada. Litigation subsequently ensued between New Sensor, J.S.C. Svetlana, PM Components, and PM of America as to the rights to the Svetlana name. That litigation has recently been settled and resolves the issues between the parties in the United States and Canada.

PM of America will continue to sell vacuum tubes manufactured by SED/SPb of St. Petersburg, which produced the

tubes PM of America previously marketed as "Svetlana" and which is still controlled by J.S.C. Svetlana. These tubes will be marked in the United States and Canada with the logo shown above [Winged–C logo].

(Matthews Decl. Ex. C.)

CE maintains a website, http://www.ced-ist.com, which sets forth a menu of products sold by CE, including vacuum tubes. (*See* Ferrari Decl. Ex. H; Def. Mem. at 7.) By selecting "tubes" from the list of products, the user is brought to a page that lists several brands of tubes, including SVETLANA and Winged–C. Choosing SVETLANA brings the user to a list of tubes manufactured by JSC that were purchased by CE before January 15, 2003. (Cravener Reply Decl. ¶ 3; Magee Decl. ¶ 2.) Clicking on "Winged–C tubes" brings the user to a list of Winged–C brand tubes for purchase, as well as the following text, interspersed with the Winged–C logo:

How can you be sure you are getting the tubes made in JSC Svetlana's St. Petersburg's [sic] factory? Look for the "Winged–C" logo.

As the tube world gets more and more complicated, it is important to make sure that you know what you are buying and how to identify the tubes you want to buy. Here's the story:

JSC Svetlana is a Russian company that owns and operates the Svetlana factory in St. Petersburg, Russia, which has been making vacuum tubes for almost a century. These tubes have been known in the United States as Svetlana brand tubes and have had the "S" logo and/or the [Winged–C] logo (a Cyrillic S) on them.

Because of a change in ownership of the former American distributor, JSC Svetlana recently lost its ability to sell vacuum tubes bearing the "Svetlana" name, while maintaining the ability to sell the tubes bearing the [Winged–C] logo in the United States and Canada.

The Xpo-pul factory, otherwise known as Reflector, in Saratov, Russia is an entirely different Russian company that makes vacuum tubes for an American corporation that controls the Sovtek and Electro–Harmonix brand names. This same American corporation now also owns and controls the Svetlana brand name in the United States and Canada and recently introduced (last Fall) a new line of Svetlana branded vacuum tubes produced in the Xpo-pul factory. The Xpo-pul factory "Svetlana" tubes are **not** the same Svetlana tubes that you have been accustomed to over the years!

Rest assured that the Svetlana factory in St. Petersburg, Russia is still producing vacuum tubes and has no plans to stop. These tubes are available to you through CE Distribution under the **"Winged C"** name.

*All* current production St. Petersburg factory tubes—**and only those tubes**—do bear the [Winged–C] mark, while in the past some did not.

In today's world if you want the tubes that you've come to know in the past as "Svetlana", the only way to be sure you're getting that tube is to look for the [Winged–C] mark.

(Ferrari Decl. Ex. H) (emphasis in original). According to the website, because CE is a wholesale company, only dealers and distributors may purchase tubes from the website. *See* http://www.cedist.com. To ensure this restriction, a customer must enter a customer code and password in order to make a purchase.

In August 2003, New Sensor filed this lawsuit against CE for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and N.Y. Gen. Bus. Law §§ 360–k, 360–l,

based on CE's use of SVETLANA on its website. CE now moves to dismiss with prejudice, or in the alternative, for summary judgment. Because both parties have submitted affidavits and other evidence outside the pleadings, pursuant to Fed.R.Civ.P. 12(b) the Court will treat the motion as one for summary judgment. *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir.1991) (where materials outside the pleadings were presented, Rule 12(b) requires the court to treat the motion to dismiss as one for summary judgment). Although Rule 12(b) requires that parties be given an opportunity to provide supporting material when the court converts a motion to dismiss to one for summary judgment, the Plaintiff here had sufficient notice and opportunity because the original motion sought summary judgment as an alternate form of relief. *Groden v. Random House, Inc.,* 61 F.3d 1045, 1053 (2d Cir.1995).

## DISCUSSION

### I. *Summary Judgement Standard*

Summary Judgment under Fed.R.Civ.P. 56(c) is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When evaluating a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable infer-

ences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Instead, the opposing party "must designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A genuine factual issue exists if there is sufficient evidence favoring the opposing party for a jury to return a verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

### II. *CE's use of SVETLANA on tubes purchased from PMA prior to March 4, 2003*

■ New Sensor claims that there is a material issue of disputed fact as to whether CE is authorized under the Settlement Agreement to use the term "Svetlana Factory C Marking" to describe the tubes purchased from PMA prior to March 4, 2003 and whether this usage leads to a likelihood of confusion. CE counters that its use of the mark in this style is expressly permitted by the Settlement Agreement, which contains the following provision under the heading "Release of Customers":

> [W]ith respect to the use of "SVETLANA" in connection with vacuum tubes purchased from PMA, the Release includes such use before and after March 4, 2003 in connection with any such products which were invoiced by PMA at any time prior to March 4, 2003.... New Sensor agrees that all PMA inventory invoiced on or before March 3, 2003 can never be the subject of an action by New Sensor. This release and covenant not to sue ... expressly includes C.E.

Distribution, a customer of PMA with which New Sensor has a pending action which is currently on appeal.

(Matthews Decl. Ex. B, Settlement Agreement § 1(b)).

According to CE, all tubes identified as "Svetlana Factory C" on its website were purchased from PMA prior to January 15, 2003. (Cravener Reply Decl. ¶ 4.) This is supported by the President of PMA, who confirms that it did not sell any vacuum tubes bearing the SVETLANA mark after January 15, 2003, pursuant to the Settlement Agreement. (Magee Decl. ¶ 2.) According to PMA, "[a]ll tubes sold by PMA to CE Distribution since January 15, 2003 have been marked only with the 'Winged C' logo." (Magee Decl. ¶ 2.) New Sensor has provided no evidence to the contrary. CE's use of the SVETLANA mark to identify the tubes purchased from PMA prior to March 4, 2003 is clearly sanctioned by the terms of the Settlement Agreement. Summary judgment must therefore be granted for the Defendant on any claims arising out of CE's use of the SVETLANA mark to identify the tubes purchased from PMA prior to March 4, 2003.

## III. Trademark Infringement under the Lanham Act

Plaintiff claims that there is a material issue of disputed fact regarding whether Defendant's use of SVETLANA creates a likelihood of confusion as to source. Section 32 of the Lanham Act, 15 U.S.C. § 1114, forbids "any person ... without the consent of the registrant" to "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." *Vene-*

*tianaire Corp. of Am. v. A & P Imp. Co.,* 429 F.2d 1079, 1081 (2d Cir.1970).

■ "There being no dispute about the lack of [Plaintiff's] consent to the use of its marks or their validity," the only issue with regard to infringement here is whether Defendant's use of the mark is likely to cause confusion. *New York Stock Exch., Inc. [NYSE] v. New York, New York Hotel LLC,* 293 F.3d 550, 554 (2d Cir.2002) (affirming district court's grant of summary judgment for defendant on infringement claim where there was no likelihood of confusion). "[I]f no such likelihood of confusion is found, a defendant will generally not be held to have infringed plaintiff's mark." *Gruner + Jahr USA Publ'g v. Meredith Corp.,* 991 F.2d 1072, 1074 (2d Cir.1993). Factors considered in determining whether there is a likelihood of confusion "include: 1) the strength of the plaintiff's mark; 2) the similarity of plaintiff's and defendant's marks; 3) the competitive proximity of the products; 4) the likelihood that plaintiff will 'bridge the gap' and offer a product like defendant's; 5) actual confusion between products; 6) good faith on the defendant's part; 7) the quality of defendant's product; and 8) the sophistication of the buyers." *Id.* at 1077 (citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.1961), *cert denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961)). "The *Polaroid* factors are not dispositive, and additional factors may be considered or initial factors abandoned." *Id.*

■ To prevail on the likelihood of confusion issue, Plaintiff must show "a probability, not just a possibility, of confusion." *NYSE,* 293 F.3d at 554. That is, "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.* (quoting *Mushroom Makers, Inc. v. R.G.*

*Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979)). CE's website creates no such likelihood of confusion. The *Polaroid* factors are considered in turn below.

### 1. Strength of the Mark

The strength of a mark is determined by "its tendency to identify the goods or services sold under the mark as emanating from a particular, although possibly anonymous, source." *The Sports Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 960–61 (2d Cir.1996) (affirming district court's finding that "The Sports Authority" was a strong mark). For purposes of this inquiry, courts have created four categories of marks with increasing protection: generic, descriptive, suggestive, or arbitrary and fanciful. *Id.* at 961; *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976).

> "A generic term is a common name ... that describes a kind of product." *Gruner + Jahr,* 991 F.2d at 1075. A descriptive mark is "one that tells something about a product, its qualities, ingredients or characteristics." *Id.* at 1076. A suggestive mark suggests the product, though it may take imagination to grasp the nature of the product. *Id.* An arbitrary mark has an actual dictionary meaning, but that meaning does not describe the product; a fanciful mark is a made-up name.

*Brockmeyer v. Hearst Corp.,* 248 F.Supp.2d 281, 294 (S.D.N.Y.2003).

 Although SVETLANA may appear arbitrary or fanciful to an English-speaker, it is necessary to determine the meaning of the mark in its country of origin. *Orto Conserviera Cameranese Di Giacchetti Marino & Co., S.N.C. v. Biconserve,* 2000 WL 232108, at \*1 (2d Cir. Feb.8, 2000) (affirming district court finding that the meaning of the mark in Italian was a generic designation for a type of olive) (unpublished). This is known as the foreign equivalents doctrine. *See Mondo, Inc. v. Sirco Int'l Corp.,* 1998 WL 849401, at \*6 n. 2 (S.D.N.Y. Dec.7, 1998) (trademark "mondo" used in connection with luggage is arbitrary in Italian, its language of origin); *see also Otokoyama Co. Ltd. v. Wine of Japan Imp., Inc.,* 175 F.3d 266, 270–71 (2d Cir.1999) (evidence showing "otokayama" to be generic for a type of dry sake in Japan was relevant to plaintiff's claim of exclusive right to the mark).

The website maintained by Plaintiff's assignor, SED, stated the following about the meaning of SVETLANA in Russian:

> Svetlana is a woman's name derived from the word "svet," which means, in the Russian language, "light." The company was established in 1889 and changed its name to Svetlana in 1913 when it began manufacturing incandescent light bulbs. Light-bulb manufacturing naturally evolved into vacuum tube manufacturing in 1928.

(Kozinets Decl. Ex. D.)[2] This explanation demonstrates that the mark is not entirely arbitrary or fanciful, but suggestive. With some imagination, the consumer may connect the suggestion of light with vacuum tubes, Plaintiff's product. These tubes appear to be made of a clear material with an interior that glows when power is attached, vaguely resembling a light bulb. (*See* Ferrari Decl. Exs. D, E, G, H.)

---

**2.** During oral argument, Plaintiff's attorney stated that these pages no longer appear on its website and are available now only because they were cached by the Google search engine. Even if this is the case, the documents nevertheless provide insight into the meaning of SVETLANA in Russian and the connection between the mark and Plaintiff.

To determine whether a suggestive mark is a strong one for purposes of the *Polaroid* inquiry, "we look to the secondary meaning that the mark has acquired, because the ultimate issue to be decided is the mark's origin-indicating quality in the eyes of the purchasing public." *Sports Authority,* 89 F.3d at 961 (quoting *Lang v. Retirement Living Publ'g Co. Inc.,* 949 F.2d 576, 581 (2d Cir.1991)). Having been registered for more than five years, SVETLANA ELECTRON DEVICES is "incontestably distinctive for protectability purposes," a factor "properly considered by a trial court on the issue of likelihood of confusion." *Gruner + Jahr,* 991 F.2d at 1078. Additionally, "independent indicia of strength" may be examined to determine the strength of the mark. *Sports Authority,* 89 F.3d at 961.

New Sensor argues that consumers strongly associate SVETLANA with SED and New Sensor. New Sensor supports this assertion with the declaration of two former principals of SED, who detail the history of the joint venture, the research and development performed by SED in the U.S., as well as the acquisition of trademark rights in SVETLANA ELECTRON DEVICES and the Stylized "S." (*See* Rafiee and Gray Decl.) According to New Sensor, because of these efforts, the goodwill in SVETLANA inured to SED, New Sensor's assignor. (Pl. Mem. at 8.)

Plaintiff's conclusion, however, is belied by significant evidence submitted by CE. Several publications produced by SED, including a promotional brochure, use SVETLANA to refer to JSC's factory in St. Petersburg:

> **Introducing Svetlana:** ... Svetlana is Russia's leading designer and manufacturer of power grid tubes.

> **100 year of excellence in engineering and manufacture:** Svetlana has been a leading power grid tube supplier since it first developed electron devices in 1928. The company was founded in St. Petersburg in 1889 ....

> Svetlana was reorganized as a privatized open stock company in 1992 ....

> The company is the largest power grid tube manufacturer in Russia.

> **Svetlana in the West:** In early 1992, Svetlana Electron Devices, Inc. was formed to bring Russian power grid tube technology to the West. This U.S.-based company is working with the newly-privatized Svetlana in St. Petersburg ....

> Svetlana Electron Devices, Inc. has its corporate headquarters in Huntsville, Alabama and has distribution partners throughout the world. The company provides sales, marketing and application engineering support to Svetlana power grid tube customers throughout the West.

(Kozinets Decl. Ex. F.) Supporting these statements are photographs of JSC's factory where the word SVETLANA in Cyrillic and the year 1913 are emblazoned on the facade. (Cravener Reply Decl. Exs. A, B.)

Statements such as those above clearly demonstrate that SVETLANA is primarily associated with JSC's factory in St. Petersburg, not with SED or New Sensor. Even accepting Plaintiff's arguments that SED was singularly responsible for the introduction of JSC's products to American consumers, in its own literature SED repeatedly informed consumers that the tubes were manufactured at a St. Petersburg factory called SVETLANA. Therefore, SVETLANA is a strong mark because it creates an association between the vacuum tubes and JSC's factory in St. Petersburg. SVETLANA does not, however, create a strong association between the tubes and New Sensor, the party claiming to deserve the mark's protection,

or its assignor, SED. As such, this factor favors Defendant.

## 2. Similarity of the Marks

To determine whether two marks are similar, courts assess "the overall impression created by the logos and the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Gruner + Jahr*, 991 F.2d at 1078. Here, the overall impression created by CE's website dispels consumer confusion by providing consumers with information on the vacuum tube market and the history of the brands. CE further diminishes any possibility of confusion by prominently displaying its Winged–C trademark on its website, going so far as to instruct consumers to "Buy Winged–C Tubes." *See The Swatch Group v. Movado Corp.*, 2003 WL 1872656, at *4 (S.D.N.Y. April 10, 2003) (citing *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 46 (2d Cir.2000) (prominent use of Dentyne mark on Dentyne Ice chewing gum significantly reduced likelihood of consumer confusion with Ice Breakers gum)). "When a product's brand name is prominently featured, the likelihood of confusion based on a subsidiary mark is unlikely." *Id.* In addition, Defendant uses only the word SVETLANA, not the entire mark for which Plaintiff holds a trademark, SVETLANA ELECTRON DEVICES. (*See* Rafiee and Gray Decl. Ex. F.) A consumer viewing the website would be left with little doubt that CE is distributing Winged–C tubes and not SVETLANA tubes. This *Polaroid* factor favors Defendant.

## 3. Proximity of the Products; 4. Bridging the Gap

Where, as here, parties produce competing products, "one of the *Polaroid* factors, proximity of the products in the market-place, is necessarily answered in favor of the senior user, and another factor, the likelihood of bridging the gap, is not a relevant inquiry." *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir.1992). Because the parties' products compete directly, the third *Polaroid* factor favors Plaintiff.

## 5. Actual Confusion

To show actual confusion, New Sensor must demonstrate that CE's use of SVETLANA "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Sports Authority*, 89 F.3d at 963 (internal quotations omitted) (on motion for summary judgment actual confusion was demonstrated by plaintiff who submitted evidence of misdirected phone calls between plaintiff's and defendant's establishments). Plaintiff has provided no evidence of actual consumer confusion stemming from CE's use of SVETLANA on its website. This factor favors Defendant.

## 6. Defendant's Good Faith

This factor concerns whether CE used SVETLANA on its website "with the intention of capitalizing on the plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 482–83 (2d Cir.1996) (quoting *Lang*, 949 F.2d at 583). CE clearly intended the opposite. Its website goes to great lengths to *dispel* consumer confusion by providing consumers with information on the vacuum tube market and the source of various brands of vacuum tubes. Throughout the website, CE displays its own logo and trademark prominently. Furthermore, CE uses SVETLANA in a descriptive sense to identify the factory in which its Winged–C tubes are manufac-

tured. Lastly, New Sensor submits that SED–SPb—the name New Sensor would mandate CE use—is simply an acronym for "Svetlana Electron Devices St. Petersburg." It is clear that CE did not intend to capitalize on New Sensor's reputation and instead sought to eliminate consumer confusion that might exist because of the relatively recent changes in the SVETLANA mark. This factor weighs in favor of Defendant.

### 7. Quality of Defendant's Product

The quality of a defendant's product can be relevant in two ways: "(1) an inferior product may cause injury to the plaintiff trademark owner because people may think that the senior and junior products came from the same source; or (2) products of equal quality may tend to create confusion as to source because of this very similarity." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 505 (2d Cir.1996); *contra Bristol–Myers*, 973 F.2d at 1044 ("Where ... the competitive products are of nearly identical quality, a comparison of the quality of the products is not particularly helpful in determining the likelihood of confusion"). New Sensor's tubes are manufactured with the same specifications as those sold by CE under the Winged–C trademark. (Ferrari Decl. Ex. I.) Nevertheless, CE's website makes clear that despite their identical specifications, CE's tubes are *not* the same as those now called SVETLANA. Because CE's website so clearly differentiates between the Winged–C tubes and the SVETLANA tubes, there is no possibility of confusion based on the tubes' identical specifications. This factor favors Defendant.

### 8. Sophistication of the Buyers

Under this heading, a court evaluates "[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *W.W.W. Pharm. Co. v. The Gillette Co.*, 984 F.2d 567, 575 (2d Cir.1993) (quoting *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir.1979)). "[T]he more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in ... trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol–Myers*, 973 F.2d at 1046–47.

Here, because the ordinary purchaser of vacuum tubes on CE's website is sophisticated and knowledgeable, there is very little possibility of confusion. Although anyone with access to the internet may view CE's website, only dealers and distributors may *purchase* tubes. These professionals "know the market and are less likely than untrained consumers to be misled or confused by the similarity of different marks." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 151 (2d Cir.2003) (quoting the district court: "retail customers ... are not expected to exercise the same degree of care as professional buyers, who are expected to have greater powers of discrimination"); *see also Ivoclar North Am., Inc. v. Dentsply Intern., Inc.*, 41 F.Supp.2d 274, 281 (S.D.N.Y.1998) (dentists and dental assistants are sophisticated professionals whose knowledge of the field makes them unlikely to be confused about a commonly-used mark). The dealers and distributors who purchase tubes from CE's website surely have considerable knowledge of the vacuum tube market. They are likely to buy in larger quantities and, as such, will invest more time and money into researching their purchases. As a result, there is little likelihood that they will be confused as to the source of the products on CE's website. This factor favors Defendant.

Evaluation of the *Polaroid* factors "is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco*, 220 F.3d at 46 (affirming district court's grant of summary judgment on infringement claims where parties' use of the marks was dissimilar). Based on the analysis above, this Court finds that there is no likelihood that consumers will be confused as to the source of Defendant's product. Most of the factors favor Defendant—strength of the mark, the degree of similarity between the two marks, good faith, quality of the Defendant's product, and sophistication of the buyers. One factor, proximity of the products, favors Plaintiff. One factor, likelihood of bridging the gap, is irrelevant. Defendant's motion for summary judgment on the Lanham Act infringement claim is granted.[3]

The discussion and application of the *Polaroid* factors aside, there has not been a scintilla of evidence proffered by the Plaintiff to suggest that confusion has been sowed by the Defendant. SVETLANA, to the extent that it appears on the Defendant's website at all, does so not to confuse but to allay confusion. Indeed, it is fair to say, that to the extent it appears at all, it does so to protect consumers, not to confuse them. It accurately informs that consumers who may previously have had a preference for vacuum tubes made by the Svetlana factory in St. Petersburg, may continue to purchase those tubes but which now bear the Winged–C logo. It truthfully and accurately recounts the historical events which resulted in the designation change. There is "no such sanctity in the

[name SVETLANA] as to prevent its being used to tell the truth. It is not taboo." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924) (Holmes, J.). It is difficult to see any other way in which the Defendant could have informed the public that the tubes now bearing the Winged–C logo were made in St. Petersburg in a factory that was historically known as the Svetlana factory. *See Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores, Inc.*, 299 F.2d 33, 36 (2d Cir.1962).

## IV. *Lanham Act False Advertising Claims*

New Sensor contends that there is a material issue of fact as to whether CE's website makes misleading and inaccurate statements about New Sensor, the Alabama litigation, and the source and origin of CE's and New Sensor's products. The "false advertising" provision of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), "is intended to prevent confusion, mistake, or deception regarding the characteristics or qualities of goods or services." *In re Connecticut Mobilecom, Inc. v. Cellco P'ship*, 2003 WL 23021959, at *9 (S.D.N.Y. Dec.23, 2003) (quoting *Target Adver. v. Miller*, 2002 WL 999280, at *8 (S.D.N.Y. May 15, 2002)). This section provides that:

> Any person who, on or in connection with goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> . . .

---

**3.** Because there is no likelihood of confusion, it is unnecessary to evaluate CE's fair use defense.

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). Although the Lanham Act previously covered only a Defendant's statements regarding its *own* products, the Act was amended in 1988 to cover disparagement of a competitor's products as well. *Wojnarowicz v. Am. Family Ass'n,* 745 F.Supp. 130, 141 (S.D.N.Y.1990) (pamphlet distributed by defendant containing portions of plaintiff's artistic works is not advertising or promotion for purposes of the Lanham Act).

■ To establish a false advertising claim pursuant to § 1125(a)(1)(B), Plaintiff must demonstrate: (1) that Defendant made false or misleading factual representations of the nature, characteristics, or qualities of Plaintiff's goods, services or commercial activities; (2) that Defendant used the false or misleading representations "in commerce"; (3) that Defendant made the false or misleading representations in the context of commercial advertising or commercial promotion; and (4) that Defendant's actions made plaintiff believe that he was likely to be damaged by such false or misleading representations. *Groden v. Random House, Inc.,* 1994 WL 455555, at *5 (S.D.N.Y. Aug.23, 1994), *aff'd,* 61 F.3d 1045 (2d Cir.1995) (granting summary judgment for defendant on false advertising claim where statements were opinion, not fact). The only question in dispute here is whether CE made false or misleading representations about Plaintiff's goods or commercial activities. Plaintiff may establish falsity by showing that "an advertisement is either literally false or that the advertisement, though literally true, is likely to mislead and confuse consumers." *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1548–49 (2d Cir.1991).

■ New Sensor has not provided any evidence demonstrating a serious dispute regarding the truth of the statements on CE's website. CE's use of SVETLANA to describe JSC's factory and the history of the factory is truthful, as analyzed *supra.* CE's characterization of the lawsuit between New Sensor, PMA, and JSC is supported by statements from New Sensor's president, as well as the Settlement Agreement. (*See* Matthews Decl. Ex. B.) Finally, CE's statement that New Sensor's tubes "are not the same Svetlana tubes that you have been accustomed to over the years" is literally true. Although their specifications are the same, they are manufactured in different factories. (*See* Ferrari Decl. Ex. I.) In fact, there are few material differences between the information on CE's website and the letter sent from PMA to its customers, authorized by New Sensor. (Matthews Decl. Ex. C.)

■ New Sensor further argues that even if the website is literally true, it will leave the consumer with a false impression regarding New Sensor, the trademark dispute, and the association between the parties. New Sensor presents no evidence that consumers have been or are likely to be misled or confused by CE's website. "When an advertisement is not literally false, but rather is ambiguous or implicitly false, a plaintiff can only establish a claim of false advertising through a survey." *Malaco Leaf, AB v. Promotion in Motion, Inc.,* 287 F.Supp.2d 355, 379 (S.D.N.Y. 2003) (granting summary judgment for defendants on false advertising claim where plaintiff failed to present any evidence on consumer perceptions) (citing *Johnson & Johnson v. Smithkline Beecham Corp.,* 960 F.2d 294, 297–98 (2d Cir.1992) (affirming

denial of injunctive relief where evidence failed to support assertion that defendant's commercial communicated a false message to consumers); *Hilton Int'l Co., Inc. v. Hilton Hotels Corp.*, 888 F.Supp. 520, 538 (S.D.N.Y.1995) (false advertising claim fails where the advertisement was not literally false and there was no survey to establish implied falsity)). Because there are no material issues of fact in dispute regarding the literal or implied falsity of statements on its website, Defendant's motion on the Lanham Act false advertising claims is granted.

*V. State Law Trademark Infringement and Injury to Business Reputation*

■ Finally, Defendant seeks summary judgment on Plaintiff's state law claims for trademark infringement and injury to business reputation under N.Y. Gen. Bus. L. §§ 360–k, 360–l.[4] As with the Lanham Act, a plaintiff suing for trademark infringement under state law must prove that defendant's use of the mark "is likely to cause confusion, mistake or to deceive." *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 369 N.E.2d 1162, 1165 (1977) (citing earlier version of the statute). As the *Polaroid* analysis *supra* demonstrates, Plaintiff cannot prove a likelihood of confusion based on Defendant's use of SVETLANA on its website.

■ In an action for injury to business reputation and dilution under N.Y. Gen. Bus. L. § 360–l, New Sensor must demonstrate: (1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of "blurring" or "tarnishment." *U–Neek, Inc. v. Wal–Mart Stores, Inc.*, 147 F.Supp.2d 158, 175 (S.D.N.Y.

2001) (citing *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir.1994)). Plaintiff has proffered no such evidence. Defendant's motion for summary judgment on Plaintiff's state law claims is granted.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is granted in full.

SO ORDERED.

---

4. Plaintiff's complaint erroneously cited N.Y. Gen. Bus. Law § 360–m. Plaintiff's Memorandum in Opposition corrects this error by citing to N.Y. Gen. Bus. Law §§ 360–k and 360–l.